IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. 3:19-cr-00034-MO-1 |
| v. | |
| **JONATHAN ARMAND HARRIS,** | OPINION AND ORDER |
| Defendant. | |

**MOSMAN, J.,**

On April 6, 2021, I held a hearing regarding Defendant Jonathan Armand Harris's argument that the breaks in the chain of custody of the firearm at issue are so serious that the firearm is inadmissible at his upcoming trial. Now that the matter has been fully briefed and argued, I write here to explain why I reject Mr. Harris's argument.

### DISCUSSION

Generally, "a defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced." *United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995). However, "[a] break in the chain of custody . . . can be serious enough that the district court may abuse its discretion in admitting the evidence." *United States v. Mejia*, 597 F.3d 1329, 1336 (D.C. Cir. 2010). The Government must introduce "sufficient proof" so that "a reasonable juror could find" that the evidence is in "substantially the same condition" as when it was seized. *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) (internal quotation marks and

1 – OPINION AND ORDER

citation omitted). "[I]n the absence of any evidence of tampering, a presumption exists that public officers properly discharge their official duties." *Id.* (alteration accepted) (internal quotation marks and citation omitted). "Merely raising the possibility of tampering is not sufficient to render evidence inadmissible." *Id.*

Over the course of multiple hearings, several officers and public officials presented testimony relevant to Mr. Harris's chain-of-custody argument. Larry Wingfield, a police officer with the Portland Police Bureau, was one of the first two officers on the scene the night of Mr. Harris's arrest. Tr. [ECF 68] at 52–54, Sept. 10, 2019. Officer Wingfield testified that Mr. Harris resisted arrest and that during the ensuing struggle, he noticed that Mr. Harris had a gun. *Id.* at 56–59. Officer Wingfield and Mr. Harris fought for possession of the gun, with Officer Wingfield ultimately putting Mr. Harris in a chokehold. *Id.* at 58–60. Two other officers arrived as back up, and the four officers were able to handcuff Mr. Harris. *Id.* at 60–61. Officer Wingfield testified that he was eventually able to gain possession of the gun, which he identified as a loaded Glock 19. *Id.* at 61. He testified that the magazine was still inside the gun when he gained possession and that he witnessed another officer take out the magazine. *Id.* at 78. He also testified that the officers were in control of the scene and had it secured four or five minutes after the arrest. *Id.* at 79–80.

David Noah Harding, a patrol officer with the Portland Police Bureau, testified that on the night of the arrest, he saw a Glock handgun partially inside Jonathan Harris's hoodie pocket. Tr. [ECF 241] at 18–19, 23, Apr. 6, 2021. Officer Harding testified that he ejected the magazine, placed the magazine off to the side on the ground, and then took possession of the gun and handed it to another officer. *Id.* at 23–24. Officer Harding stated that shortly afterward, he saw

2 – OPINION AND ORDER

the gun on top of a patrol car, which was in an area that was "completely locked down." *Id.* at 19. He did not know whether or when the magazine was retrieved. *Id.* at 24.

Stephen Jack, a police officer formerly with the Portland Police Bureau, testified that Officer Harding handed him a Glock handgun and asked him to remove it from the area. *Id.* at 26–29. Officer Jack stated that he unloaded the gun and placed it in an evidence bag along with the loose rounds. *Id.* at 28. He then placed the evidence bag on top of a patrol car. *Id.* Officer Jack did not recall bagging the magazine, nor did he know where the magazine was located. *Id.* at 29.

Huntley Miller, a police officer with the Portland Police Bureau, testified that he witnessed the magazine come out of the gun and that he later picked it up off the ground. Tr. [ECF 69] at 36, 50–51, Sept. 19, 2019.

Heather Durham-Powell, a criminalist with the Portland Police Bureau, testified that she collected a Glock 19 handgun, which was missing a serial number, from the trunk of a patrol car. Tr. [ECF 241] at 33–35, 38, Apr. 6, 2021. The parties agree that by the time Ms. Durham-Powell arrived, a firearm and a magazine were in an evidence bag in the trunk. Gov't's Resp. [ECF 232] at 5; Def.'s Reply [ECF 234] at 3. Ms. Durham-Powell then brought the gun to a secure facility, where she stored the evidence inside a vault. Tr. [ECF 241] at 36–37, Apr. 6, 2021. About a week later, Ms. Durham-Powell took photographs, and then she put the evidence in a locker to be moved to a property warehouse. *Id.* at 37.

Andy Galbreath, the lead evidence control specialist for the Portland Police Bureau's Property and Evidence Division, testified as to how evidence gets to and is stored in the warehouse. *Id.* at 50–51. Mr. Galbreath testified that sensitive items, including guns, are stored in separate vaults. *Id.* at 51. He described in detail how the gun's chain of custody was maintained

3 – OPINION AND ORDER

once it was moved to the warehouse. *Id.* at 51–56. According to the chain-of-custody report, the magazine was with the gun. Gov't's Status Report [ECF 226] Ex. 2, at 2.

Lynne Getzlaff, a forensic lab specialist at the state crime lab in Clackamas, provided similar testimony as to the gun's chain of custody at the crime lab. Tr. [ECF 241] at 59–67, Apr. 6, 2021. She also testified that the magazine was with the gun. *Id.* at 63.

Amanda Johnson, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, *id.* at 10, testified that a scientist with the crime lab was able to confirm the gun's serial number: WCN298. *Id.* at 73. This is the same serial number of a gun that Mr. Harris allegedly stole approximately three weeks prior to his arrest. Tr. [ECF 68] at 28, 31, 53, Sept. 10, 2019.

At the conclusion of its presentation, the Government conceded that there was a break in the chain of custody, as no one could explain how the gun got from the top of the patrol car, where it was left by Officer Jack, to the trunk of the car, where Ms. Durham-Powell collected it. Tr. [ECF 241] at 80–81, Apr. 6, 2021. And in later briefing, the Government acknowledges that "Officer Jack testified that he did not bag the magazine and does not know who did." Gov't's Resp. [ECF 232] at 5. In his brief, Mr. Harris identifies the same gaps. Def.'s Reply [ECF 234] at 3–4.

Upon review of the transcripts and briefing, I find that the Government has introduced sufficient proof so that a reasonable juror could find that the firearm and magazine are in substantially the same condition as when they were allegedly seized from Mr. Harris. The above-identified gaps in the chain are not serious enough to render the gun or the magazine inadmissible; instead, the gaps go to the weight of the evidence. The witnesses consistently identified the gun as a Glock and testified that the scene was under control and secured shortly

after Mr. Harris was in custody. The witnesses noted that the magazine was discharged and placed on the ground, and Officer Miller testified that he later picked it up off the ground. Although Officer Miller did not testify that he then placed the magazine with the gun in an evidence bag, a reasonable juror could draw this conclusion. And although nobody testified as to how the gun and magazine ended up in the trunk, a reasonable juror, viewing the totality of the evidence, could find that the gun is the same gun, and in substantially the same condition, as the one allegedly seized from Mr. Harris. This is particularly true given the lack of any evidence of tampering, which creates a presumption that the public officers involved in this matter properly discharged their official duties.

## CONCLUSION

For the above reasons, I hold that Mr. Harris's argument goes to weight, not admissibility, and I therefore DENY his claim that the gun and magazine are inadmissible. This matter will proceed to trial, set to begin on July 13, 2021.

IT IS SO ORDERED.

DATED this 15th day of June, 2021.

_____
MICHAEL W. MOSMAN
United States District Judge

5 – OPINION AND ORDER